Alex R. Straus, SBN 321366
astraus@milberg.com
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
280 S. Beverly Drive
Beverly Hills, CA 90212
Telephone: (917) 471-1894
Facsimile: (310) 496-3176

*Counsel for Plaintiff and Proposed Class*
*(additional counsel listed on signature page)*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

DMITRY ZINGER, on behalf of himself and
all others similarly situated,

     Plaintiff,

     v.

SINCH AMERICA, INC., INTELIQUENT,
INC., ONVOY, LLC, DOE
TELEMARKETING COMPANIES 1-100,
JOHN AND JANE DOES 1-100, and
OSCAR WERNER,

     Defendants.

Case No.: 22-cv-02250-EMC

Hon. Edward M. Chen

**FIRST AMENDED CLASS ACTION**
**COMPLAINT**

**DEMAND FOR JURY TRIAL**

    1.  **Telephone Consumer Protection Act**
       **47 U.S.C. § 227 *eq seq.***
    2.  **47 C.F.R. § 64.1200(d)**

        Plaintiff Dmitry Zinger, individually and on behalf of all others similarly situated, brings

this class action to stop Defendants from placing thousands of unsolicited robocalls in violation of

the Telephone Consumer Protection Act ("TCPA"). Plaintiff makes the following allegations based

on his personal knowledge, investigation by counsel, and as to all other matters, on information and

belief.

### NATURE OF THE ACTION

       1.     This action arises under the federal Telephone Consumer Protection Act (TCPA), a

remedial statute enacted in 1991 in response to consumer outrage over the proliferation of intrusive,

nuisance telemarketing practices. The TCPA and its accompanying regulations prohibit Defendants from making telephone solicitations to persons who have listed their telephone numbers on the national Do Not Call Registry, a database established to allow consumers to exclude themselves from telemarketing calls, which include text messages, unless they consent to receive the calls in a signed, written agreement. The TCPA also prohibits Defendants from making telephone calls to persons that feature a prerecorded or artificial voice without the prior express consent of the party called.

2.      Plaintiff Dmitry Zinger is one of the millions of consumers who have registered their numbers on the national Do-Not-Call registry. Nevertheless, Mr. Zinger has received numerous telemarketing calls from Defendants Sinch America, Inc ("Sinch"), Inteliquent, Inc. ("Inteliquent") and Onvoy, LLC ("Onvoy").

3.      Despite Plaintiff sending numerous complaints to Defendants Inteliquent and Onvoy and to their parent company, Sinch, and Sinch's CEO Oscar Werner, about Defendants' constant stream of robocalls made to Mr. Zinger in violation of the TCPA's Do Not Call Provision along with requests to be placed on all Defendants' internal do-not-call list, Plaintiff Zinger continues to receive these unwanted calls from Defendants.

4.      Mr. Zinger has been victimized by multiple telemarketing calls made by Defendants, including without limitation robocalls offering him car warranties, medical services, Medicare advisory services, student loan forgiveness services, and many others.

5.      At the time of these calls, Defendants Werner, Sinch, Inteliquent and Onvoy knew they were making or initiating unsolicited calls on behalf of an array of telemarketers that flagrantly violated the TCPA to sell Mr. Zinger products and services he did not want and did not request, or to gather his personal information.

6.      Plaintiff brings this action on behalf of the four proposed national classes defined below and seeks statutory damages of $500-$1,500 per illegal call.

CLASS ACTION COMPLAINT

**PARTIES**

7.     Plaintiff Dimitry Zinger is a resident of the State of Wisconsin residing Germantown. At all times herein, Mr. Zinger has been the exclusive and customer user of telephone number 414-XXX-6258.

8.     Defendant Sinch America, Inc. (Sinch) is an interconnected VoIP provider and the parent company for Defendants Onvoy and Inteliquent. It is a part of the international network of Sinch companies based on Sweden. Sinch America, Inc. is a Delaware Corporation with offices around the Country, including its Sinch United States San Francisco location at 600 California Street, San Francisco, California 94108.

9.     Defendant Oscar Werner is the CEO of Sinch. Upon information and belief, Defendant Werner can be served at Sinch's San Francisco office at 600 California Street, San Francisco, California 94108. Plaintiff sues Defendant Werner individually for personal liability.

10.     Defendant Inteliquent, Inc. is an interconnected VoIP provider with its headquarters at 550 West Adams Street, Suite 900, Chicago, IL 60661. Inteliquent merged with Onvoy, LLC under the name Inteliquent.

11.     Defendant Onvoy, LLC is or has been an interconnected VoIP provider with its headquarters at 550 West Adams Street, Suite 1130, Chicago, IL 60601.

12.     DOE Telemarketing Companies 1-100 are unidentified call centers that interact with consumers when Onvoy, Inteliquent and Sinch route a live call recipient to their call centers.

13.     John and Jane Doe Defendants 1-100 are the principals, owners, officers and directors of Doe Telemarketing Companies 1-100. Plaintiff brings this action against them individually for personal liability.

**JURISDICTION AND VENUE**

14.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq.*

15.     This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C §§ 1332 and 1367 because this is a class action in which the matter or controversy exceeds $5,000,000 exclusive of interests and costs, and in which some members of the proposed classes are citizens of a state different from Defendants.

16.     Venue is proper in this District because this District is where a substantial portion of the conduct giving rise to Plaintiff's claims occurred, where Defendants transact business, Defendant Sinch has a principal place of business in San Francisco, and the remaining Defendants are deemed to reside in any judicial district in which they are subject to personal jurisdiction at the time the action is commenced.

## DIVISIONAL ASSIGNMENT

17.     Pursuant to N.D. Cal Civ. L.R. 3-2(c), (d), and 3-5(d), this Action is properly assigned to the San Francisco or Oakland division because a substantial part of the events and omissions which give rise to the claims emanated from one of Defendant Sinch America, Inc.'s principal places of business located in San Francisco, and members of the putative Classes reside in San Francisco and Oakland.

## FACTUAL ALLEGATIONS

### A.     THE TCPA DO NOT CALL REGISTRY

18.     In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

19.     Consumers who do not want to receive telemarketing calls may indicate their preference by registering their telephone numbers on the national Do-Not-Call registry pursuant to 47 C.F.R. § 64.1200(c)(2):

> No person or entity shall initiate any telephone solicitation to …
> [a] residential telephone subscriber who has registered his or her
> telephone number on the national do-not-call registry of persons
> who do not wish to receive telephone solicitations that is
> maintained by the Federal Government. Such do-not-call

registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator.

20.     Federal regulations implementing the TCPA provide that "[t]he rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991."" 47 C.F.R. § 64.1200(e).

21.     According to the Federal Trade Commission, the Do Not Call Registry, which was established in 2003, has over 244 million active registrants. During the 2021 fiscal year, the FTC received over five million Do Not Call complaints.[1]

22.     These registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator. 47 C.F.R. § 64.1200(c)(2).

23.     The FCC's regulations implementing the TCPA also require persons or other entities that make telemarketing calls to maintain company-specific do-not-call lists and to honor do-not-call requests. 47 C.F.R. § 64.1200(d). Company-specific do-not-call requests must be honored for five years from the time the request is made. 47 C.F.R. § 64.1200(d)(6). Sellers must coordinate the do-not-call requests received by their telemarketers, so that all telemarketing calls on behalf of the seller cease if a consumer makes a do-not-call request to one of the seller's telemarketers.

---

[1] https://www.ftc.gov/reports/national-do-not-call-registry-data-book-fiscal-year-2021 (visited April 7, 2022)

CLASS ACTION COMPLAINT

**B.      THE      TCPA      RESTRICTIONS      ON      CALLS      USING      ARTIFICIAL      OR PRERECORDED VOICES.**

24.      The TCPA also regulates the use of telephone equipment and prohibits calls that feature prerecorded messages or artificial voices to any residential or cellular telephone without the prior express consent of the recipient.

25.      Specifically, the plain language of sections 227(b)(1)(A)(iii) and 227(b)(1)(B) prohibit using an artificial or prerecorded voice to make any call to a wireless or residential telephone number without the prior express written consent of the called party unless the call is made solely to collect debt owed or guaranteed by the United States or is initiated for emergency purposes.

26.      According to the findings of the FCC, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are costly, inconvenient, and a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

27.      The FCC confirmed that the TCPA applies to text messages: "We affirm that under the TCPA, it is unlawful to make any call using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number . . . This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service."[2]

---

[2] Report & Order, *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, at ¶ 165 (F.C.C. July 3, 2003) (footnotes omitted). The FCC reiterated this conclusion in 2012—*In re* Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C. Rcd. 1830, at ¶ 4 (F.C.C. Feb. 15, 2012)—and in 2015. *See* In re *Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, at ¶¶ 27, 107–108, 111–115 (F.C.C. July 10, 2015), appeal resolved, *ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687 (D.C. Cir. 2018) (setting aside two parts of 2015 ruling but leaving this portion undisturbed)

28.     The FCC has defined prior express written consent in 47 C.F.R. § 64.1200(f)(9) as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

29.     Under the TCPA, the burden is on the Defendant to demonstrate that Mr. Zinger and members of the Prerecorded Message and Artificial Voice Class gave their prior express consent to receive a call featuring prerecorded message and artificial voices to their cellular or residential telephones.

## C. FEDERAL COMMUNICATION REGULATIONS GOVERNING ABANDONED CALLS

33.     One of the problems with Sinch, Inteliquent and Onvoy using automated equipment to select and dial phone numbers (whether or not such equipment technically qualifies as an "autodialer" under the TCPA) is that it leads to a lot of abandoned calls. Indeed, the called party may answer the call but the call center where these Defendants transfer consumers to may be at capacity and nobody can speak to the consumer. Consumers complain about having the rush to answer the phone only to find nobody at the other end of the call.

34.     The FCC Regulations accompanying the TCPA restrict call abandonment in two ways. First, FCC regulations require that the caller not disconnect an unanswered telemarketing call prior to at least fifteen seconds or four rings.[3] The rule is meant to prevent Defendants like Sinch from disconnecting before the recipient has time to reach the phone. Second, if the called party answers the call, FCC regulations restrict call abandonment.[4]

---

[3] 47 C.F.R. § 64.1200(a)(6).
[4] 47 C.F.R. § 64.1200(a)(7).

35.     A call is considered abandoned if it is not connected to a live sales representative within two seconds of the called person's greeting.[5]

36.     The FCC regulations allow regulated persons to abandon up to three percent of their calls in a single calling campaign, as measured over a thirty-day period, and compliance records must be maintained.[6]

37.     Defendants must keep compliance records of their call abandonment rates.

**D. TECHNOLOGY USED IN ROBOCALLING SCHEMES AND THE BUSINESS PRACTICES, MARKETING AND CUSTOMER SERVICE PRACTICES OF SINCH, INTELIQUENT AND ONVOY**

**1. The Technology**

38.     Defendants Onvoy, Inteliquent and Sinch are interconnected VoIP providers that provide their customers – in this case DOE Telemarketing Companies 1-100 and John and Jane Does 1-100 – with a full suite of VoIP software and network connectivity to operate their telemarketing businesses.

39.     Upon information and belief, the Sinch and Inteliquent network and suite of products offered are the nearly identical. Onvoy, upon information and belief, purchased Inteliquent and now operates under the Inteliquent brand name.

40.     Sinch represents on its website, "Relax and lay back – you're in good hands!" Sinch touts its "Supernetwork" on its website claiming "Sinch has the largest global tier 1 network with 600+ direct operator connections and an unmatched range of OTT channels." Sinch claims it has "True global reach" because it can "[r]each any mobile phone on the planet – in seconds, or less. With Sinch, you get 100% consumer penetration on any mobile channel." Sinch also claims it is a **"One-stop shop"** offering "CPaaS, SMS, Voice, Video, Verification, SMS, rich messaging, SaaS and more … we're here for all your mobile messaging needs." (emphasis added). Finally, Sinch

[5] *Id.*
[6] 47 C.F.R. § 64.1200(a)(7)(iii).

claims to offer "World-class support" and advertises its customer service claiming "[w]e don't want to sell you a product. We want to help you succeed. Enterprises love our superior customer service!"[7] Sinch advertises on its website that "You can depend on us," that it has 115,000,000 phone numbers powered by its network with 300,000,000,000 minutes of use on its network annually, and that it has 37% more local number coverage than other providers.

41.     Like Sinch, Inteliquent advertises on its website that "You can depend on us," that it has 115,000,000 phone numbers powered by its network with 300,000,000,000 minutes of use on its network annually, and that it has 37% more local number coverage than other providers.[8] Inteliquent provides its services in the following states: Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin and Wyoming.

42.     They offer multiple direct messaging communication services, an array of voice and video services, including creating messages with artificial intelligence voices for their customers. For example, Sinch advertises that:

> The first-ever 2022 Gartner® Magic Quadrant™ for Enterprise Conversational AI Platforms was just released, and we're proud to say Sinch is included. 'With CPaaS, we make it possible to reach people anywhere, on virtually any channel,' said Oscar Werner, CEO of Sinch. With applications like Chatlayer, we make it easy – with no tech resources needed – for them to automate their customer communications using AI chatbots and voicebots."[9]

---

[7] https://www.sinch.com (visited April 7, 2022)
[8] https://www.inteliquent.com/about-us (visited April 7, 2022).
[9] https://www.sinch.com/blog/cpaas-conversational-ai-what-makes-sinch-stand-out/ (visited April 8, 2022).

43.     The technical ability to place robocalls at issue in this litigation is dependent on (1) voice-over-interest-protocol (VoIP) and related technology to create the calls, and (2) a "gateway carrier" to introduce the (often foreign) phone traffic into the U.S. phone system. The term "gateway carrier" refers to a U.S.-based person or entity that agrees to accept VoIP traffic (often from a foreign source) and either pass the traffic to a downstream VoIP carrier or deliver the call directly to the consumers' phone thereby routing the calls to their final destination in the United States. VoIP uses broadband internet connection – as opposed to an analog copper phone line – to place calls locally, long distance, and internationally, without regard to whether the call recipient uses a cellular phone or a traditional, wired phone. The technology employed by modern telecommunication providers mediates between digital VoIP signals and regular telephone signals so that communication is seamless between VoIP users and non-VoIP users at either end. VoIP is used in telemarketing schemes both to make the initial robocall to U.S. phones and to communicate with individuals who either answer the robocall or call the number contained in the recorded message.

44.     VoIP relies upon a set of rules for electronic communication called Session Initiation Protocol (SIP). Much like the way browsing websites on the internet uses HyperText Transfer Protocol (HTTP) to initiate and conduct information exchanges between devices through exchanges of packets of information, SIP is a set of rules used to initiate and terminate live sessions for things such as voice and video communication between two or more points connected to the internet. Both SIP voice communication and HTTP web-browsing rely on exchanging data packets between two points. For example, web browsing via HTTP requires an individual to request information from another point on the internet, usually by clicking on a hyperlink or entering a web address in the browsers' address bar, usually preceded by http://www, which tells the device that it is making a request for information on the World Wide Web via HTTP. A device receiving that request will

CLASS ACTION COMPLAINT

send back information to the requesting device, and thus, the requesting device will display the requested website.

45.     Similarly, a voice call via SIP starts as a data packet sent to initiate a call, a responsive packet sent back that indicates whether the call has been answered, and numerous other packets transiting back and forth; amongst these data packets is information that machines turn into audible signals, i.e., a conversation that can be heard by the participants. In the case of robocalls, a recorded message is transmitted once the call is answered by voicemail picking up or a live person answering.

46.     Robocalls should <u>not</u> be understood as traditional phone calls. Rather, they are requests for information and responsive data packets transiting the internet via SIP. An outgoing robocall begins as a request for information sent by an automated system for selecting and dialing telephone numbers that enables the caller to make millions of sequential requests for information (i.e., outbound VoIP phone calls) in a very short time. This is a specialized type of telecommunications equipment with the capacity to (1) store or produce telephone numbers to be called, and (2) request responsive information from devices at the other end of the call, i.e., dial telephone numbers. The requests for information are directed to devices (here, telephones) that send back responsive information when the call is answered either by a live person or the person's voicemail. When it receives information from the called device indicating that the call is answered, it will then send information back to that device (the phone) in the form of a recorded message.

47.     Upon information and belief, Defendants Sinch, Inteliquent and Onvoy create these recordings with artificial voices (or "bot" voices).

48.     These robocalls made by Defendants can not only send prerecorded messages to the individual's phone, but can misrepresent who is calling on the caller ID. Normally, a recipient's caller ID will display information identifying the caller by means of a telephone number; however, many VoIP software packages allow the caller to specify the information appearing on the call

recipient's caller ID, much in the same way an email's subject line can be edited to state whatever the sender wishes. This practice of specifying what appears on the recipient's caller ID is called "spoofing." This feature of VoIP technology permits a caller with an illicit motive to spoof a legitimate phone number in order to cloak the fraudster with indicia of authority and induce the recipients to answer the call. Spoofing also encourages potential victims to return calls when they look up the spoofed number and see that it is a number used by an official government entity. In the robocall schemes described throughout this Complaint, spoofing serves the purpose of deceiving the potential target of an unsolicited robocall about who is calling them.

49.     Spoofing any phone number is a simple matter of editing a SIP file to state the desired representation on the caller ID. These files can then be loaded by Defendants into an automatic system for the selection and dialing of telephones to become robocalls, replicated millions of times with the spoofed, fraudulent caller ID information.

50.     The robocalls generally leave prerecorded messages containing misinformation. Some of these messages direct the recipient to press a key to speak with a live operator. Other messages leave a domestic telephone number as a "call-back" number. In either case, the recipient is connected to a fraudster at an (often foreign) call center.

**2.   Defendants' Business Practices Demonstrate They Are Directly Liable for Making the Calls at Issue**

51.     Sinch, Inteliquent and Onvoy are interconnected VoIP providers that provide their customers with a full suite of VoIP technology. Sinch states on its website that it provides voice termination, which means it carriers calls from overseas and passes them into the U.S. telephone system and will pass calls from the United States to overseas destinations. With respect to many of the robocalls described throughout this Complaint for which Defendants provides termination services, it is a gateway carrier. In the context of these telemarketing schemes, U.S.-bound robocalls

are "U.S. terminat[ed]" calls and return calls to telemarketing fraudsters in other countries are "international voice terminat[ed] calls.

52.     Sinch, Inteliquent and Onvoy also provide the telephone numbers used to make these calls, the network through which these calls are placed, the hardware and software needed to make the calls, and the automated equipment needed to make massive amounts of robocalls. These three Defendants are the ones that make or initiate the actual call to consumers using their VoIP technology. Telemarketer in call centers merely wait for Sinch, Inteliquent and Onvoy to route a live caller to the call center if the recipient does not hang up immediately or ignores the call.

53.     Along with the basic functions of a VoIP carrier, Defendants Sinch, Onvoy and Inteliquent do a lot more. Rather than just provide VoIP access, these Defendants create the content for the telemarketing campaigns they operate through their network. For example, one service Sinch provides is artificial voice services to its clients. On its website, Sinch admits it provides templates for these artificial voice bots and states in response to a FAQ asking, "How do I build a good bot?" Sinch's answer: We've got a lot of experience with bot design and are happy to share the wealth. When you log in to the platform, you'll find best-practice templates to guide you. You can use these or adapt them as you live – no additional cost."[10]

54.     It also advertises programable Voice API "that reaches customers on any platform or channel . . . Enjoy a high-quality voice experience, optimized delivery routes, and a carrier super network – all in one place." Sinch also advertises on its website "call recording", creating pre-recorded messages for "customized online phone conversations," "text-to-speech," "number masking" (which prevents Caller ID from identifying the caller), and a "local presence" by

---

[10] https://www.sinch.com/products/chatlayer/ (visited April 10, 2022)

assigning numbers to its customers that have the same area codes as the people their customers are trying to reach.[11] Sinch also advertises its text messaging services on its website.

55.     Upon information and belief, Sinch controls the voice message template used as the template for the robocall, creates the artificial voice on the robocall, places the robocall to a recipient's cell phone using its VoIP network, is fully aware that its customers are using its platform to engage in activity that violates the TCPA and many other laws.

56.     Sinch, Inteliquent and Onvoy also control which telephone users receive the prerecorded message or artificial voice when the call is placed through its automated system for selecting and dialing telephone numbers. This is apparent because they do not target a specific audience with their robocalls – they seem to call everyone. For example, these Defendants will send an illegal robocall to Plaintiff related to a "Medicare advisory services", yet Mr. Zinger is not on Medicare. He also has received student loan scam forgiveness "services" calls from Defendants, but Mr. Zinger doesn't have any student loans. He also receives a substantial number of calls offering him car warranty products and services even though he has complained to Sinch and Inteliquent that he does not want or require car warranty products or services.

57.     Over a period of years, Defendants received many notices, inquiries, warnings, complaints concerning fraudulent robocalls and other suspicious activity occurring on their systems. These warnings and inquiries came from other consumers, an industry trade group, and government agencies. Nevertheless, Defendants Sinch, Inteliquent and Onvoy continue enable these telemarketing schemes by placing calls for other telemarketers using their VoIP technology.

58.     Defendant Sinch does not appear to take these warnings and complaints seriously. As CEO Oscar Werner responded to an email from Mr. Zinger complaining about unlawful robocalls and stated, "Another one of these."

---

[11] https://www.sinch.com/products/apis/voice-calling/ (visited April 10, 2022)

59.   Defendants' failure to take these warnings seriously and police traffic on their interconnected VoIP network has even caused the Dorchester County Sherriff's Office to warn the public about a telemarketing text message scam apparently emanating from Defendants where the message purported to be from someone impersonating the Sheriff of Dorchester County. *See* https://www.live5news.com/2022/03/05/dorchester-county-sheriffs-office-warns-public-new-scam/

60.   Some of the numbers that Defendants used to call Mr. Zinger are now assigned to different telephone carriers. Rather than shutting down illegal telemarketing practices on its network that it essentially created, upon information and belief, Defendants merely sell, license or otherwise transfer the numbers to different companies that have no idea these numbers are used as part of telemarketing practices that violate the TCPA.

### 3.   Defendant Oscar Werner Knowingly Allows Sinch, Inteliquent and Onvoy to Make Telephonic Sales Calls That Violate the TCPA.

61.   Defendant Werner is fully aware that Sinch, Inteliquent and Onvoy receive an avalanche of complaints about illegal robocalls.

62.   On information and belief, Defendant Werner instructs Sinch and Inteliquent to place unsolicited robocalls in violation of the TCPA

63.   Defendant Werner has received emails directly that state Defendants Sinch, Onvoy and Inteliquent are responsible for violating the legal rights of American consumers.

64.   Defendant Werner has acknowledged that Sinch gets many complaints about spam robocalls. Defendant Werner merely has these complaints forwarded to Inteliquent.

65.   Defendant Werner has instructed his employees to take no action with respect to these complaints other than to forward them to Inteliquent's general counsel.

66.   Defendant Werner has been copied on numerous emails complaining about illegal telephone calls placed through the Sinch, Inteliquent and Onvoy network.

67. Yet Defendant Werner does <u>nothing</u> to stop these calls other than forwarding complaints to Inteliquent's general counsel, even though it appears the Inteliquent and Sinch networks are the same.

68. Defendant Werner continues to allow call centers to access Defendants' interconnected VoIP network and has publicly stated he is aware that his company places calls to consumers featuring artificial and/or prerecorded voices.

69. Defendant Werner is also aware that Sinch provides prerecorded message templates with artificial voices to call centers and that Defendants Sinch and Inteliquent place these calls with these prerecorded message templates completed by their call center customers to consumers using their interconnected VoIP platform.

70. Rather than shutting down these telemarketing operations that flagrantly violate the TCPA, Defendant Werner simply views complaints about such calls as "another one of these," forwards them to Inteliquent's general counsel, and takes no further action.

**E.     IN THE ALTERNATIVE TO DIRECT LIABILITY, DEFENDANTS WERNER, SINCH, INTELIQUENT AND ONVOY ARE THE AGENTS OF DOE TELEMARKETING COMPANIES 1-100 AND JOHN AND JANE DOES 1-100.**

71. In the alternative to the theory of direct liability against Werner, Sinch, Onvoy and Inteliquent for the TCPA violations alleged herein, these Defendants are the agents of DOE Telemarketing Companies 1-100 and John and Jane Does 1-100.

72. The FCC has explained that its rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations.

73. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing may be held vicariously liable under federal common law principles of agency for violations of … section 227(b) … that are committed by third-party telemarketers.

74.    More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer has apparent (if not actual) authority to make the calls.

75.    The FCC has rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of a formal agency and immediate direction and control over the third-party who placed the telemarketing call.

## 1. **Actual Authority**

76.    DOE Telemarketing Companies 1-100 and John and Jane Does 1-100 have or had an agency relationship with Werner, Sinch, Inteliquent, and Onvoy.

77.    DOE Telemarketing Companies 1-100 and John and Jane Does 1-100 provided Werner, Sinch, Inteliquent and Onvoy actual authority to make the calls described throughout this complaint using the telephone numbers supplied by Werner, Sinch, Inteliquent and Onvoy.

78.    DOE Telemarketing Companies 1-100 and John and Jane Does 1-100 provided content to Werner, Sinch, Inteliquent and Onvoy to use to complete the prerecorded voice message templates offered by Werner, Sinch, Inteliquent and Onvoy.

79.    Sinch, Werner, Inteliquent and Onvoy agreed to use the content provided by DOE Telemarketing Companies 1-100 and John and Jane Does 1-100 in making the calls described throughout this Complaint, and did in fact use this content in making the calls described throughout this Complaint.

80.    DOE Telemarketing Companies 1-100 and John and Jane Does 1-100 provided Sinch, Werner, Inteliquent and Onvoy actual authority to route live callers to the call centers owned and/or operated by DOE Telemarketing Companies 1-100 and John and Jane Does 1-100.

81.    Sinch, Werner, Inteliquent and Onvoy did route these live callers to the call centers owned and/or operated by DOE Telemarketing Companies 1-100 and John and Jane Does 1-100.

82.     Despite Werner, Sinch, Inteliquent and Onvoy receiving a constant stream of complaints from consumers about unwanted calls, these Defendants continued to make the telemarketing calls as the agents of DOE Telemarketing Companies 1-100 and John and Jane Does 1-100 even though they knew (and continue to know) that DOE Telemarketing Companies 1-100 and John and Jane Does 1-100 were (and are still) engaged in violations of the TCPA. DOE Telemarketing Companies 1-100 and John and Jane Does 1-100 also know that Sinch, Inteliquent and Onvoy are engaged in unlawful activity that violates the TCPA in making these calls on their behalf.

83.     In order for DOE Telemarketing Companies 1-100 and John and Jane Does 1-100 to ensure their telemarketing campaigns target live cellular and residential telephone where callers answer (rather than dead lines or fax machine lines), upon information and belief, Sinch, Inteliquent and Onvoy to place brief calls and immediately disconnect after (i) determining the phone called works and (ii) is answered by a live human being so their call center clients reach more people.

84.     Moreover, Sinch, Inteliquent and Onvoy did in fact place brief calls and immediately disconnected the call after (i) determining the phone called works and/or (ii) is answered by a live human being, as they were directed to by their principals, DOE Telemarketing Companies 1-100 and John and Jane Does 1-100.

85.     DOE Telemarketing Companies 1-100 and John and Jane Does 1-100 also authorized Sinch, Inteliquent and Onvoy to conceal the number used to initiate to conceal the identities of DOE Telemarketing Companies 1-100 and John and Jane Does 1-100.

86.     Sinch, Inteliquent and Onvoy did in fact use caller ID spoofing technology to hide the number used to call Plaintiff and Class members.

**F.      PLAINTIFF DMITRY ZINGER'S FACTUAL ALLEGATIONS**

87.     Plaintiff Dmitry Zinger (Mr. Zinger) is a citizen of the State of Wisconsin and at all times herein has been the exclusive and customer user of the telephone number 414-XXX-6258, which was assigned to a cellular telephone service.

88.     Mr. Zinger's telephone number has been registered with the National Do-Not-Call Registry as of June 5, 2006.

89.     Mr. Zinger received the following unsolicited telemarketing calls from Defendants even though his phone number is registered is on the national Do-Not-Call Registry. He reported each call to Onvoy, Inteliquent and/or Sinch. Many of these calls featured prerecorded messages or artificial voices made for non-emergency purposes and without his prior express consent.

90.     Below are just some examples of the telemarketing calls Mr. Zinger has received offering him products and services he does not want and did not request (such as car warranty services) that he reported to Defendants Sinch and Inteliquent:

    a.   March 10, 2022 at 9:08 a.m. CST: Mr. Zinger received a robocall from (414) 279-7618;

    b.   February 4, 2022 at 7:09 a.m. CST: Mr. Zinger received a robocall from (262) 266-1753;

    c.   February 3, 2022 at 12:49 p.m. CST: Mr. Zinger received a robocall from (505) 397-5859 trying to sell him a car warranty;

    d.   January 11, 2022 at 10:39 a.m. CST: Mr. Zinger received a robocall from (346) 273-0292 trying to sell him a car warranty;

    e.   January 10, 2022 at 12:38 p.m. CST: Mr. Zinger received a robocall from (414) 751-0573;

    f.   December 30, 2021 at 9:28 a.m. CST: Mr. Zinger received a robocall from (414) 240-9937 from telemarketers trying to buy his home for cash;

g. December 13, 2021 at 9:00 a.m. CST: Mr. Zinger received a telemarketing robocall from (262) 582-2073.

h. December 9, 2021 at 9:34 a.m. CST: Mr. Zinger received a telemarketing robocall from (608) 384-5561;

i. December 1, 2021 at 10:24 a.m. CST: Mr. Zinger received a robocall from (534) 202-4799 that sounded like a call center in a foreign country offering to selling him advisory services for Medicare (even though Mr. Zinger is a young man and not on Medicare);

j. November 23, 2021 at 4:41 p.m. CST: Mr. Zinger received a robocall from (414) 206-6411 offering to sell him medical services;

k. November 23, 2021 at 10:06 a.m. CST: Mr. Zinger received a robocall from (703) 468-0947 that sounded like a phishing attempt;

l. November 23, 2021 at 9:53 a.m. CST: Mr. Zinger received a robocall from (414) 206-6411 offering to sell him medical services;

m. November 4, 2021 at 5:10 p.m. CST: Mr. Zinger received a robocall from (703) 988-7611 soliciting him for a job offer;

n. November 1, 2021 at 11:22 a.m. CST: Mr. Zinger received a call from (414) 279-6384 offering to purchase his property.

o. November 1, 2021 at 11:55 a.m. CST: Mr. Zinger received a call from (253) 366-7843 offering to sell him prescription drugs from a Canadian pharmacy.

p. September 22, 2021 at 1:46 p.m. CST: Mr. Zinger received a call from (262) 266-1904 purportedly offering Mr. Zinger "free medical testing." Mr. Zinger had received at least two prior calls from the same number.

q. September 1, 2021 at 3:04 p.m. CST: Mr. Zinger received a call from (414) 404-0899 offering him certain promotional items.

r.  September 1, 2021 at 2:48 p.m. CST: Mr. Zinger received a call from (262) 266-1874 offering him certain promotional items.

s.  August 10, 2021 at 3:15 p.m. CST: Mr. Zinger received a call from (209)-792-0563 advertising services from the "National Enrollment Center."

t.  August 6, 2021 at 12:01 p.m. CST: Mr. Zinger received a call from Defendants "bot" from (251) 336-3007 purporting to be Amazon.

u.  Mr. Zinger received the following calls offering him "Medicare advisory services" on the below dates and times from the following numbers:

    i.  August 25, 2021 at 10:50 a.m. CST from (208) 844-6347

    ii.  August 23, 2021 at 9:31 a.m. and 9:32 a.m. CST from (870) 464-2132;

    iii.  August 20, 2021 at 2:34 p.m. CST and 2:35 p.m. CST from (870) 464-2132;

    iv.  August 19, 2021 at 4:45 p.m. CST from (870) 464-2132;

    v.  August 10, 2021 at 12:19 p.m. CST from (262) 342-2858;

    vi.  April 9, 2021 at 4:32 p.m. CST from (414) 296-1663;

    vii.  April 8, 2021 at 3:40 p.m. CST from (414) 812-0010;

    viii.  July 29, 2021 at 1:10 p.m. CST from (251) 346-8521

    ix.  July 28, 2021 at 10:29 a.m. CST from (414) 895-7611; 10:54 a.m. and 2:28 p.m. CST from (414) 677-6327; and

    x.  July 21, 2021 at 10:54 a.m. and 2:28 p.m. CST from (414) 677-6327;

91.  The above calls are just a small sample of the unsolicited telemarketing calls Mr. Zinger has received from the Defendants over the last year.

92.  Mr. Zinger has also received multiple calls within the last 12 months from Defendants where the phone rings once and stops, or where he picks up the phone and there is no live agent to speak with and only silence.

CLASS ACTION COMPLAINT

93.     Mr. Zinger never consented to receiving telemarketing calls with prerecorded messages or artificial voices, nor did he consent to receiving calls from Defendants after registering his telephone number with the national Do-Not-Call registry and requesting his number be placed on Defendants' company-specific do-not-call lists.

94.     Mr. Zinger has sent countless requests to Defendants requesting Defendants stop calling his telephone and block his number from receiving calls from these Defendants.

95.     Despite multiple requests, Mr. Zinger continues to receive calls from Defendants.

96.     Subsequent to filing this action, Mr. Zinger received an avalanche of spam phone calls with spoofed telephone numbers appearing on his caller identification.

**E.     JOINT VENTURE**

97.     Mr. Zinger is informed and believes, and on that basis alleges, that at all times herein mentioned, Defendants Werner, Onvoy, Inteliquent and Sinch were the joint venturers of Defendants Doe Telemarketing Companies 1-100 and John and Jane Does 1-100, and at all times herein were acting within the course and scope of such joint venture in making these robocalls to Mr. Zinger and members of the Classes, and each Defendant has ratified, approved, and authorized the acts of each of the remaining Defendants with full knowledge of said facts.

98.     Mr. Zinger is informed and believes, and on that basis alleges, that Defendants Onvoy, Inteliquent, Sinch and Werner, on the one hand, and Defendants Doe Telemarketing Companies 1-100 and John and Jane Does 1-100, on the other hand, at all times herein mentioned were joint venturers of each other, and were at all time acting within the course and scope of such joint venture, and that Defendants Onvoy, Inteliquent, Sinch and Werner ratified, approved, and authorized the acts of Defendants Doe Telemarketing Companies 1-100 and John and Jane Does 1-100 with full knowledge of said facts.

**F.      AIDING AND ABETTING/CONSPIRACY**

99.     Defendants Onvoy, Inteliquent, Sinch, Werner, and each of them, aided and abetted, encouraged, rendered substantial assistance to Defendants Doe Telemarketing Companies 1-100 and John and Jane Does 1-100 in breaching their obligations to Mr. Zinger, as alleged herein. In taking action, as alleged herein, to aid and abet and substantially assist the commissions of these wrongful acts and the other wrongdoing complained of, each of the Defendants acted with an awareness of its/his/her primary wrongdoing and realized that its/his/her conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing of the other Defendants. Defendants, and each of them, also knowingly conspired to make unlawful telemarketing calls to Mr. Zinger despite knowing that he was on the national Do-Not-Call list or that the calls otherwise violated the TCPA because they featured a prerecorded message and/or artificial voice.

**G.      ALTER EGO**

100.    There is a unity of interests between Sinch, Onvoy and Inteliquent and each act as the alter ego of the others.

## CLASS ACTION ALLEGATIONS

101.    Mr. Zinger incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

102.    Mr. Zinger brings this action individually and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

103.    Mr. Zinger proposes the following four National Classes, subject to amendment as appropriate:

> **National Do-Not-Call Class:** All persons throughout the United States whose telephone numbers were listed on the national Do-Not-Call registry, and to whom, at any time within the applicable limitations period, more than one non-emergency call within any

twelve-month period was placed by Defendants to offer or promote the sale of goods and services.

**Company-Specific Do-Not-Call Class**: All persons throughout the United States whose requested their telephone numbers be listed on Defendants' company-specific do-not-call list(s), and to whom, at any time within the applicable limitations period, more than one non-emergency call within any twelve-month period was placed by Defendants to offer or promote the sale of various goods and services.

**Prerecorded or Artificial Voice Robocall Class:** All persons who in the United States who received a non-emergency call from Defendants at any time within the applicable limitations period that featured an artificial voice or prerecorded message that did not provide prior express consent to receiving calls with prerecorded messages or artificial voices.

**Abandoned Call Class:** All persons throughout the United States to whom, at any time within the applicable limitations period, received more than one non-emergency call to their cellular telephone within any twelve-month period from Defendants that was not answered and ranged less than 15 seconds or four rings, or was not connected to a live sales representative within 2 seconds of answering the call.

104.   This action may properly be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

105.   All members of the four Classes, respectively, have been subject to and affected by the same conduct, namely: (i) receiving telemarketing calls from Defendants after registering their telephone number with the National Do-Not-Call Registry; (ii) receiving telemarketing calls from Defendants after requesting their telephone numbers be placed on Defendants' company-specific do-not-call lists; (iii) receiving telemarketing calls from Defendants featuring prerecorded messages and/or artificial voices without providing prior express consent to receive such calls; and (iv) receiving calls from Defendants that are disconnected before the consumer has time to answer the phone.

106.   Mr. Zinger is a member of all four nationwide Classes.

107.   Excluded from the four Classes are Defendants, any entity in which Defendants have a controlling interest, Defendants' agents and employees, any Judge to whom this action is assigned

- 24 -

and any member of the Judge's staff and immediate family, as well as Plaintiff's and Defendants' attorneys and members of these attorneys' law firms and their immediate family members.

108.    Mr. Zinger is informed and believes, and on that basis alleges, that each of the four National Classes are comprised of thousands of United States residents that received telemarketing calls from Defendants. The precise number of members of the four National Classes are easily ascertainable from the business records of Defendants Sinch, Inteliquent and Onvoy.

109.    Questions of law and fact common to the four nationwide Classes exist and predominate over questions affecting only individual Class members; and resolving these issues for one Class member will resolve them for others. These common legal and factual issues include without limitation:

    a.  Whether members of the National Do-Not-Call Class registered their phone numbers with the national Do-Not-Call registry;

    b.  Whether members of the National Do-Not-Call Class received more than one non-emergency call from Defendants within a twelve-month period after registering their telephone numbers with the national Do-Not-Call registry;

    c.  Whether members of the National Do-Not-Call Class requested that their numbers be removed from the national Do-Not-Call registry prior to receiving more than one non-emergency call within a twelve-month period from Defendants;

    d.  Whether members of the Company-Specific Do-Not-Call Class requested Defendants place their numbers on Defendants' company-specific do-not-call lists;

    e.  Whether members of the Company-Specific Do-Not-Call Class received more than one non-emergency call within a twelve-month period from Defendants after requesting to be placed on the Defendants' company-specific do-not-call lists;

    f.  Whether members of the Company-Specific Do-Not-Call Class requested that their numbers be removed from Defendants' company-specific do-not-call lists prior to

receiving more than one non-emergency call within a twelve-month period from Defendants;

g. Whether members of the Prerecorded or Artificial Voice Robocall Class received non-emergency calls from Defendants featuring prerecorded messages or artificial voices offering to sell them goods or services;

h. Whether members of all four classes provided prior express consent to receiving telemarketing calls from Defendants;

i. Whether Defendants disconnected unanswered telemarketing calls prior to at least fifteen second or four rings;

j. Whether Defendants used any technology to dial a telephone number for the purpose of determining whether the line is a fax or voice line;

k. The nature and extent of the legal relationship between DOE Telemarketing Companies 1-100 and John and Jane Does 1-100 and Sinch, Werner, Inteliquent and Onvoy;

l. The nature and extent of the products and services Defendants Sinch, Werner, Inteliquent and Onvoy provide the other Defendants;

m. Whether Oscar Werner is personally liable under the TCPA;

n. Whether Defendants willfully violated the TCPA;

o. Whether Defendants are liable for statutory damages;

p. Whether Defendants are liable for treble damages;

q. Whether Defendants should be enjoined from engaging in such conduct in the future;

110.   Mr. Zinger's claims are typical of the claims of the National Do-Not-Call Class because the claims arise from receipt of more than one non-emergency call in a twelve-month period from Defendants after Mr. Zinger and members of the National Do-Not-Call Class registered their number with the national Do-Not-Call registry and before they (or the database administrator)

removed their number from the registry (if their number was ever removed from the registry). Each member of the National Do-Not-Call class is entitled to statutory damages.

111.   Mr. Zinger's claims are typical of the claims of the Company-Specific Do-Not-Call Class because the claims arise from receipt of more than one non-emergency call from Defendants after Mr. Zinger and members of the Company-Specific Do-Not-Call Class requested that Onvoy, Inteliquent and/or Sinch stop making telemarketing calls to their telephone numbers. Each member of the Company-Specific Do-Not-Call class is entitled to statutory damages.

112.   Mr. Zinger's claims are typical of the Prerecorded or Artificial Voice Call Class because each member received a non-emergency call from Defendants featuring a prerecorded message and/or artificial voice made to their telephones offering to sell them goods and services.

113.   Mr. Zinger's claims are typical of the Abandoned Call Class because he has received more than one non-emergency call within a twelve-month period from Defendants, which were not answered by Defendants or their call center customers, which lasted less than 15 seconds or four rings.

114.   Mr. Zinger is an adequate representative of all four classes because (i) his interests do not conflict with the interests of the individual members of the three classes; (ii) Mr. Zinger has retained counsel competent and experienced in complex class action litigation, particularly consumer protection litigation; and (iii) Mr. Zinger intends to prosecute this action vigorously. The interests of members of all four classes will be fairly and adequately protected by Mr. Zinger and his counsel.

115.   A class action is superior to other available means for the fair and efficient adjudication of the claims of Mr. Zinger and all four classes. Furthermore, because the economic damages suffered by the individual class members may be relatively modest, albeit significant, compared to the expense and burden of individual litigation, it would be impracticable for members of the three classes to seek redress individually for the wrongful conduct alleged herein. There will

be no undue difficulty in maintaining the management of this litigation as a class action. Mr. Zinger and members of all four classes' common claims can be economically adjudicated only in a class action proceeding, thus promoting judicial efficiency, and avoiding multiple trials and inconsistent judgments.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Violations of the Telephone Consumer Protection Act, 47 U.S.C § 227(c)
### Telemarketing in Violation of the TCPA's Do-Not-Call Provisions
### (On Behalf of the National Do Not-Call Class against Defendants Werner, Sinch, Onvoy and Inteliquent)

116.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

117.    In violation of 47 U.S.C. § 227(c), Defendants Sinch, Werner, Inteliquent and Onvoy made non-emergency calls to promote or sell various goods and services to Plaintiff and Class members' telephones whose numbers were listed on the national Do-Not-Call registry.

118.    Plaintiff and members of the National Do-Not-Call Class received more than one such non-emergency call in a twelve-month period from Defendants.

119.    Plaintiff and members of the National Do-Not-Call Class were damaged as a result of receiving these calls in the form of used cell phone minutes, drained phone batteries, invasions of privacy, and emotional distress including anxiety and mental anguish.

120.    Defendants are liable for those violations either directly and through the principles of ratification, as joint venturers, or by knowingly engaging in a conspiracy to make calls to Mr. Zinger and members of the National Do-Not-Call Class in violation of the TCPA.

121.    Pursuant to 47 U.S.C. 227(c)(5), Plaintiff Zinger and members of the National Do-Not-Call Class are entitled to an award of up to $500 in statutory damages for each call made by Defendants.

122.   Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting Werner, Sinch, Inteliquent and Onvoy from violating the TCPA in the future.

## SECOND CAUSE OF ACTION

### Violations of the 47 C.F.R. § 64.1200(d)(3)
### Failure to Honor Company-Specific Do-Not-Call Requests
### (On Behalf of the Company-Specific Do Not-Call Class Against Defendants Werner, Sinch, Onvoy and Inteliquent)

123.   Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

124.   In violation of 47 C.F.R. § 64.1200(d)(3), Defendants Sinch, Werner, Inteliquent and Onvoy continued to make telemarketing calls to Plaintiff and members of the Company-Specific Do-Not-Call Class after Plaintiff Zinger and Class members requested that their numbers be blocked from receiving such calls from Defendants.

125.   Plaintiff and members of the Company-Specific Do-Not-Call Class received more than one such call from Defendants in a twelve-month period.

126.   Plaintiff and members of the Company Specific Do-Not-Call Class were damaged by receiving such telemarketing calls in the form of used cell phone minutes, drained phone batteries, invasions of privacy, and emotional distress including anxiety and mental anguish.

127.   Defendants are liable for those violations either directly and through the principles of ratification, as joint venturers, or by knowingly engaging in a conspiracy to make calls to Mr. Zinger and members of the Company-Specific Do-Not-Call Class in violation of the TCPA.

128.   Pursuant to 47 U.S.C. 227(c)(5), Plaintiff Zinger and members of the Company-Specific Do-Not-Call Class are entitled to an award of up to $500 in statutory damages for each call made by Defendants.

129.   Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting Onvoy, Inteliquent and Sinch from violating the TCPA in the future.

**THIRD CAUSE OF ACTION**

**Statutory Violations of the Telephone Consumer Protection Act, 47 U.S.C § 227(b)**
**Prerecorded Messages and Artificial Voices Violations of the TCPA**
**(On Behalf of the Prerecorded or Artificial Voice Robocall Class against Defendants Werner,**
**Sinch, Onvoy and Inteliquent)**

130.   Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

131.   Defendants Werner, Onvoy, Inteliquent, and Sinch are, and at all times mentioned herein were each, a "person," as defined by 47 U.S.C. § 153(39).

132.   The telephone number that Defendants called to contact Plaintiff and members of the Prerecorded or Artificial Voice Robocall Class were assigned to a cellular telephone service or a residential telephone.

133.   Plaintiff and Class members did not provide their "prior express written consent" allowing Defendants to call Plaintiff's and Class members' telephones with prerecorded messages or artificial voices.

134.   Defendants did not make these telephone calls to Plaintiff and members of the Prerecorded or Artificial Voice Robocall Class's telephones "for emergency purposes."

135.   The foregoing acts and omissions by Defendants constitute numerous violations of the TCPA's restrictions on making telemarketing calls to consumers that feature prerecorded messages and/or artificial voices.

136.   Plaintiff and members of the Prerecorded or Artificial Voice Robocall Class were damaged by receiving these telemarketing calls in the form of used cell phone minutes, drained phone batteries, invasions of privacy, and emotional distress including anxiety and mental anguish.

137.   As a result of Defendants' violations of 47 U.S.C. § 227 *et seq.* Plaintiff Zinger and Class members are entitled to an award of statutory damages of $500 for each call that violates the statute.

138.    Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting Defendants from violating the TCPA in the future.

## FOURTH CAUSE OF ACTION

### Violations of the 47 C.F.R. §§ 64.1200(d)(6)-(7)
### Failing to Follow Call Abandonment Regulations
### (On Behalf of the Abandoned Call Class against Defendants Werner Sinch, Onvoy and Inteliquent)

139.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

140.    Defendants' use of automated equipment to select and dial telephone numbers to call enormous amounts of consumers causes a high rate of abandoned calls. Indeed, the called party may answer the call but the call center where these Defendants transfer consumers is often at capacity and nobody can speak to the consumer.

141.    These calls are routinely disconnected in three rings or less, but are usually just one ring and go unanswered by the intended recipient.

142.    In violation of 47 C.F.R. § 64.1200(d)(6), Defendants disconnected these unanswered telemarketing calls prior to the 4th ring and/or before 15 seconds has elapsed from when the intended recipient's phone began to ring.

143.    Upon information and belief, in violation of 47 C.F.R. § 64.1200(d)(7), Defendants failed to connect call recipients to a live sales representative within two seconds of the called person's greeting.

144.    Upon information and belief, Defendants use their technology to dial phone numbers solely to ensure they are voice or fax lines.

145.    Plaintiff and members of the Abandoned Robocall Class were damaged by receiving these telemarketing calls in the form of used cell phone minutes, drained phone batteries, invasions of privacy, and emotional distress including anxiety and mental anguish.

146.    Plaintiff Zinger and members of the Abandoned Robocall Class request an award of up to $500 in statutory damages for each call made by Defendants.

147.    Plaintiff and Class members also request injunctive relief prohibiting Defendants from violating the TCPA in the future.

## **FIFTH CAUSE OF ACTION**

**Knowing and/or Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C § 227**
***et seq.***
**(On Behalf of the All Four Classes against Defendants Werner, Sinch, Inteliquent and Onvoy)**

148.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

149.    Defendants have been flooded with complaints about the robocalls described throughout this Complaint from consumers alleging violations of the TCPA, both directly and through other entities such as the FCC, FTC and Better Business Bureau.

150.    Defendants knew that the calls described throughout this Complaint were made to consumers whose numbers are registered with the national Do-Not-Call registry.

151.    Defendants knew that the calls described throughout this Complaint were made to consumers who requested to be placed on each of these Defendants' company-specific do-not-call list.

152.    Defendants knew that the calls described throughout this Complaint often featured prerecorded messages and/or artificial voices and were made to consumers that did not provide prior express written consent to receive such calls because Defendants have received an avalanche of complaints from consumers about such calls.

153.    Defendants made calls to Plaintiff and members of the four Classes despite this knowledge.

154.    The foregoing acts and omissions of Defendants constitute multiple knowing and/or willful violations of the TCPA, including without limitation each of the above-cited provisions of 47 U.S.C. § 227 *et seq*. and its accompanying regulations.

155.    Plaintiff and members of all four Classes were damaged by receiving these calls in the form of used cell phone minutes, drained phone batteries, invasions of privacy, and emotional distress including anxiety and mental anguish.

156.    As a result of Defendants' knowing and/or willful violations of the TCPA and its accompanying regulations, Plaintiff and each member of all four Classes are entitled to trebled damages of up to $1,500 for each willful or knowing violation of the TCPA.

157.    Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting Defendants from violating the TCPA in the future.

WHEREFORE, Mr. Zinger respectfully requests that the Court grant Plaintiff and members of all four Classes the following relief against all Defendants:

A.    Injunctive relief preventing Defendants Werner, Sinch, Inteliquent and Onvoy from violating the TCPA in the future.

B.    Statutory damages of $500 for each violation of the TCPA and its accompanying regulations against Defendants Werner, Sinch, Inteliquent, and Onvoy;

C.    Trebled damages of $1,500 for each knowing or willful violation of the TCPA to the extent allowable by law against Defendants Werner, Sinch, Inteliquent and Onvoy;

D.    An order certifying this action to be a proper class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, finding that Plaintiff is a proper representative of all four Classes, and appointing Plaintiff's listed counsel as Class Counsel;

E.    An order awarding Plaintiff and members of all four Classes pre- and post-judgment interest, to the extent allowable by law; and

F.    Such other and further relief that this Court deems just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands trial by jury.


Dated April 19, 2022                          Respectfully submitted,

                                             */s/ Alex R. Straus.*
                                             Alex R. Straus (SBN 321366)
                                             **MILBERG COLEMAN BRYSON
                                             PHILLIPS GROSSMAN, PLLC**
                                             280 South Beverly Drive
                                             Beverly Hills, CA 90212
                                             Telephone:    (917) 471-1894
                                             Fax:              (310) 496-5300
                                             Email: astraus@milberg.com

                                             **MILBERG COLEMAN BRYSON
                                             PHILLIPS GROSSMAN, PLLC**
                                             Adam Harris Cohen
                                             (NY Bar No 4812145)*
                                             405 East 50th Street
                                             New York, NY 10022
                                             Telephone: (917) 392-8043
                                             Email: acohen@milberg.com

                                             * seeking admission pro hac vice

                                             *Counsel for Plaintiffs and
                                             members of the putative classes*

CLASS ACTION COMPLAINT